IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LaSONJA WRIGHT              )
o/b/o CALLIE WRIGHT         )
                           )
      Plaintiff,           )
                           )
vs.                        )    CIVIL ACTION NO. 05-00063-P-B
                           )
JO ANNE B. BARNHART,       )
Commissioner of            )
Social Security,           )
                           )
      Defendant.           )

## REPORT AND RECOMMENDATION

LaSonja Wright brings this action on behalf of her daughter Callie Wright ("Plaintiff"), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383c.  This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Oral argument was held on October 31, 2005.  Upon careful consideration of the record, the undersigned respectfully recommends that the decision of the Commissioner be **AFFIRMED**.

## I.   Procedural History

Plaintiff filed her first application for disability insurance benefits on February 6, 2001, alleging that she became disabled on June 1, 1999 because of chronic asthma, a slight speech impediment and emotional problems.  (Tr. 21, 25, 31-35, 53-59, 71).

Plaintiff's application was denied at the initial level on July 3, 2000, and she filed a request for reconsideration and timely Request for Hearing on August 29, 2001. (<u>Id</u>. at 31-42, 95-101). On January 7, 2003, Administrative Law Judge James D. Smith ("ALJ Smith" or "ALJ") conducted a hearing, which was attended by Plaintiff and her mother. (<u>Id</u>. at 206-219). On April 14, 2003, ALJ Smith entered an unfavorable decision finding that while Plaintiff has the severe impairment of asthma, it does not meet or medically equal a Listings impairment, and that she does not have a medically determinable physical or mental impairment resulting in marked and severe functional limitations. (<u>Id</u>. at 21-29). Plaintiff sought to appeal the ALJ's decision, and on December 9, 2004, her request for review was denied by the Appeals Council ("AC"), thus making the ALJ's decision the final decision of the Commissioner of Social Security under 20 C.F.R. § 404.955. (<u>Id</u>. at 4-6). The parties agree that this case is ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. <u>Factual Background</u>

Plaintiff was born on September 30, 1990, and was 12 years old at the time of the January 7, 2003. (Tr. 22, 31, 53, 60, 81, 209). Plaintiff's mother testified on her behalf at the administrative

hearing.[1]  (Id. at 206-219).  Plaintiff is in the 6th grade,[2] attends regular classes, takes the bus to/from school each day, and is one of six children living at home.  (Id. at 209-210).  She has suffered with asthma attacks/allergies for 7 years, and has required hospitalization or home visits by ambulance crews 3 times since December 2001.  (Id. at 211-213).  According to her mother, her condition has become severe in recent years.  (Id. at 215-216). Plaintiff is treated by Dr. Mobley, of the Franklin Clinic, more than twice a month; and by Dr. Sindell, a lung specialist, of Pulmonary Associates of Mobile.  (Id. at 213-217).  Plaintiff's mother indicated that she is not undergoing, nor has she undergone, any mental health treatment for depression or any other mental conditions. (Tr. 215).  With respect to Plaintiff's asthma, her mother testified that her major concerns is that it has forced Plaintiff to miss school and that it requires her to take many medications (including Prednisone and Advair).  (Id. at 216).

## III.  **Issues On Appeal**

A.   Whether the ALJ erred in finding that Plaintiff has a less than marked limitation in the domain of interacting and relating with others?[3]

---

[1]While not at issue here, the undersigned notes for the record that Plaintiff and her mother were fully advised of their right to representation at the hearing; however they elected to appear unrepresented.

[2]Plaintiff had the repeat the 6th grade.  (Id. at 210).

[3]Plaintiff initially styles one of her issues on appeal as whether the ALJ Committed reversible error in finding that the she did not meet, equal or medically equal the requirements of Listing 103.03 in Appendix 1, Subpart P, Regulations No. 4; however, in her brief, she argues a separate and distinct issue, namely whether the ALJ erred in finding that she suffers a less than

B.   Whether the ALJ erred by failing to find that Plaintiff's depression is a severe impairment?

**IV.   <u>Analysis</u>**

**A.   <u>Standard of Review</u>**

In reviewing claims brought under the Act, this Court's role is limited to determining whether the final decision is supported by substantial evidence and free of legal error.[4]  42 U.S.C. § 405(g).  <u>See</u>, <u>e.g.</u>, <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002); <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439-1440 (11th Cir. 1997); <u>Foote v. Chater</u>, 67 F.3d 1553, 1558 (11th Cir. 1995); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986); <u>Bloodsworth</u>, 703 F.2d at 1239.  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth</u>, 703 F.2d at 1239 (concluding that substantial evidence is defined as "more than a scintilla but less than a preponderance[]" and consists of "such relevant evidence as a

_____

marked limitation in the domain of interacting and relating with others). (Doc. 9 at 1, 4-5).

[4]This Court's review of the Commissioner's application of legal principles is plenary.  <u>Crawford & Co. v. Apfel</u>, 235 F.3d 1298, 1302 (11th Cir. 2000).  <u>See</u> <u>also</u> <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996).

reasonable person would accept as adequate to support a conclusion[]").  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).  In determining whether substantial evidence exists, this Court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.[5]  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); and Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

## B.  Childhood Disability Law

The Personal Responsibility and Work Opportunity Act of 1996, which amended the statutory standard for children seeking supplemental security income benefits based on disability, became effective on August 22, 1996.  Pub. L. No. 104-193, 110 Stat. 2105 § 211(b)(2) (1996) (codified at 42 U.S.C. § 1382c).  The definition of "disabled" for children under 18 is:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i); and 20 C.F.R. § 416.906.[6]  The Social Security Regulations provide a three-step sequential evaluation

---

[5]See also Robinson v. Massanari, 176 F. Supp. 2d 1278, 1280 (S.D. Ala. 2001).

[6]On September 11, 2000, the Commissioner published Final Rules for determining disability for a child under the age of eighteen.  65 Fed. Reg. 54,747, corrected by 65 Fed. Reg. 80,307.  These rules became effective on January 2, 2001 and thus apply to Plaintiff's claim.  Id. at 54,751.

process for determining childhood disability claims.  20 C.F.R. § 416.924(a).

At step one, a child's age and work activity, if any, are identified to determine if the child has engaged in substantial gainful activity.  At step two, the child's physical and mental impairments are examined to see if the child has an impairment or combination of impairments that are severe.  Under the regulations, a severe impairment is one that is more than "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations."  20 C.F.R. § 416.924(c).  To the extent the child is determined to have a severe impairment, at step three, the child must establish that the impairment results in marked and severe functional limitations.  42 U.S.C. § 1382c(a)(3)(C)(i).  The regulations set forth that an "impairment(s) causes marked and severe functional limitations if it meets, medically equals or functionally equals the listings."  20 C.F.R. § 416.924(d).  A child's impairment(s) meets the Listings' limitations if the child actually suffers from limitations specified in the Listings for that child's severe impairment.  20 C.F.R. § 416.926(d).  A child's impairment medically equals the Listings if the child's limitations are at least of equal severity and duration to the listed impairment(s).  Id.  Where, as in this case, a child's impairment or combination of impairments does not meet or medically equal any Listing, then the Commissioner must determine whether the

6

impairment or combination of impairments results in limitations which functionally equal the criteria for a Listing.[7]  Id.

To determine whether a child's impairment functionally equals a listing, the regulations require consideration of six domains:[8] 1) acquiring/using information; 2) attending/completing tasks; 3) interacting/relating with others; 4) moving about/manipulating objects; 5) caring for oneself; and 6) health/physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).  To satisfy the functionally equivalent standard, a child must have either a marked limitation in two domains of functioning, or an extreme limitation in one domain.  20 C.F.R. § 416.926a(a).[9]  A marked limitation in a domain is defined as a limitation that "interferes seriously with . . . [the child's] ability to independently initiate, sustain or complete activities."[10]   20 C.F.R. § 416.926a(e)(2)(i).   An extreme

_____

[7]In making this assessment, the reports of the State Agency medical consultants or other treating, examining and non-examining medical sources, and, the claimant's symptoms, including pain and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, are all taken into consideration.  20 C.F.R. §§ 416.927 and 416.929; and SSR 96-5, 96-6p and 96-7p.

[8]The degree of limitation in the relevant domains is then assessed within four ranges: 1) no evidence of a marked limitation; 2) less than marked limitation; 3) marked limitation; and 4) extreme limitation.  20 C.F.R. § 416.926a(b)(1).

[9]The regulation sets forth the methods for using each domain to evaluate functional equivalence to a Listing.  20 C.F.R. § 416.926a(f).

[10]Marked limitation also means a limitation that is: "'more than moderate but 'less than extreme.'"  20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  Id.  A marked limitation may arise when several activities or functions are limited or when one is limited.  Id.  A child has a marked limitation when he has a valid score two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized

limitation is defined as a limitation that "interferes very seriously with . . . [the child's] ability to independently initiate, sustain or complete activities."[11]   20 C.F.R. § 416.926a(e)(3)(i).   In conducting this analysis, the ALJ may take a wide range of evidence into account when making a determination about a child's impairments, including an individual's statements about symptoms, along with information provided by treating or examining physicians, and all other relevant evidence in the record. 20 C.F.R. §§ 416.912, 416.913(d) and 416.924a; SSR 96-7p.   See also Shinn v. Comm'r of Social Security, 391 F.3d 1276, 1283-1284 (11th Cir. 2004).

## C.   Discussion

In the case sub judice, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability.   (Tr. 28, Finding 2).   The ALJ found that Plaintiff suffers from the impairment of asthma, which is severe under the Act.   (Id., Finding 3).   However, the ALJ found that Plaintiff does not have an impairment or a combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4.   (Id.,

---

test designed to measure ability or functioning in that domain, and the child's day-to-day functioning in domain related activities is consistent with the score.   20 C.F.R. § 416.926a(e)(2)(iii).

[11]Extreme limitation also means a limitation "more than marked" and may arise when several activities or functions are limited or when one is limited. 20 C.F.R. § 416.926a(e)(3)(i).

Finding 4).   Next, the ALJ found that Plaintiff does not have severely disabling limitations in specific functions caused by a medically determinable physical or mental impairment, or disabling limitations resulting from chronic illnesses characterized by frequent illness or attacks, exacerbations or remissions, the nature of treatment required or the effects of medication.   (Id., Findings 5-7).   The ALJ then determined that Plaintiff has no limitations in the domains of acquiring/using information, attending/completing tasks, moving about/manipulating objects, or caring for onself; a less than marked limitation in the domain of interacting/relating with others; and a marked limitation in the domain of health/physical well being.   (Id., Finding 8).   The ALJ found further, that Plaintiff's assertions, relative to symptomatology, functional limitations and restrictions of activities of daily living, lack corroboration or substantiation in the medical evidence and are not credible as to a disabling impairment.   (Id., Finding 9).   From this, the ALJ concluded that Plaintiff is not disabled. (Tr. 28, Finding 10).

The undersigned finds that substantial evidence of record supports the ALJ's decision.   On June 12, 2001 C.C. Pujara, M.D. ("Dr. Pujara") examined Plaintiff and found as follows (Tr. 136-137):

- she has a history of bronchial asthma since 6 years old, which has become severe in the last 2 years and has made her miss a lot of school.

- she had a speech impediment in the past, but received therapy, and now has no speech problems.

- she gets upset when she takes her medication and feels depressed.

- her diagnosis was that she has moderate to severe bronchial asthma treated with medications and a nebulizer machine, which should be continued. She has allergies to fish, milk, cooking, etc., a history of speech problems which has been resolved, difficulty taking her mediation and difficulty accepting her condition (advised her to have asthma education and join a support group).

On June 13, 2001, Basivi Baddigam, M.D. ("Dr. Baddigam")

completed a psychiatric report on Plaintiff noting the following

(Id. at 133-135):

- her mother reported that she is very sensitive and cries because of her asthma and that her peers pick on her and tease her because of her condition.

- she admitted feeling sad for being teased and crying when that happens; however, she reported that she gets along well with others.

- she does not argue/fight, has no major behavioral problems, stays to herself most of the time and does not interact with others as she gets tired from her asthma and medication.

- she was never admitted to a psychiatric hospital, was never in treatment or on psychotropic medications, has not been abused/neglected and has no learning disability.

- she is not sleeping well, but her appetite is fair.

- she has had no speech problems in the last 2-3 years after receiving therapy.

- she takes Nasonex, Flovent, Ventolin, Azmacort, Albutrol in Nebulizer, Zyrtec and Singulair.

- for school history, she is in the 4th grade regular

classes and she listens to teachers, gets along well with peers, has no behavioral problems, has not been suspended, has good grades, has no learning disability, has no language delays, and there is no family history of psychiatric illness.

- for daily activities, her motor development is normal, she likes to swim, watch TV and play video games, but does not play sports or do chores. She does homework after school.

- for social interaction, she listens to her mother, gets along "fair" with her siblings, has a few friends and is able to maintain friendships but likes to be alone.

- she had good eye contact, good attention span, fair hygiene/grooming and she was cooperative and pleasant, smiling frequently. She was also alert and oriented with appropriate affect and euthymic mood.

- she was diagnosed with depressive disorder nos (Axis I), asthma (Axis III), and GAF 70 (Axis V). She was given a "guarded" prognosis.

Cheryl Parker, a counselor at the Dewey Center for Urban Education ("Dewey"), completed a School Activities Questionnaire dated June 1, 2001. (Id. at 91-92). In the Questionnaire, Ms. Parker opined that Plaintiff has no speech problems or oral language impairments limiting her ability to communicate; had no problems with social relationships, including both peers and teachers; had no problems with attention span, concentration and on-task behavior, ability to work without supervision, understanding assignments and completing them on time, responding to changes or routines in the classroom, with age-appropriate self-care or hygiene, or with the need for a structured setting, type of structure, and functioning outside this setting. (Id.) Additionally, Ms. Parker noted that

11

she had not observed Plaintiff exhibit any inappropriate behavior. (<u>Id</u>. at 92).

Plaintiff's school records from Dewey for the school year ending June 2001 reveal that she made above average grades, and was absent from school on 3 occasions. (Tr. 174). Plaintiff's school records from Pillans Middle School for the 2002-2003 School year indicated that she made average grades, was absent from school 13 days, and was promoted to the 7th grade. (<u>Id</u>. at 170).

On June 22, 2001, a State Agency Medical Consultant completed a childhood disability evaluation for Plaintiff, and concluded that she has no limitations in the domains of acquiring/using information, attending/completing tasks, moving about/manipulating objects and caring for yourself, and a less than marked limitation in the domain of interacting/relating with others.[12] (<u>Id</u>. at 138-143). Additionally, records from the State of Michigan reflect that in June 2001, Plaintiff qualified for the Children's Special Health Care Services program for "asthma w/o status asthm[]" and that she was treated for various asthma attacks at Children's Hospital of Michigan. (<u>Id</u>. at 107-111).

Plaintiff was treated for asthma at the "The Wellness Plan" clinic from 1999 through 2002. (<u>Id</u>. at 104, 106, 112-132). The records reflect that she was diagnosed as a severe asthmatic. (<u>Id.</u>)

---

[12]Strangely, it was also "checked" that Plaintiff has an extreme limitation in one domain; however, there was no explanation for this, much less any identification or discussion of which domain. (<u>Id</u>. at 142).

It was noted that she needs to be in a controlled environment and that her medications cause her to sleep.  (Tr. 104, 106, 112-132). Plaintiff was also treated at USA Medical Center for asthma and atypical pneumonia from November 4-6, 2002; for asthma on September 30, 2003; and for hitting her head on May 20, 2004.  (Id. at 147-167, 175-183, 201-203).  On November 27, 2002, she was treated for an asthma attack by Mobile Fire-Rescue Department, at her residence. (Id. at 105).  On March 5, 2004, Plaintiff was treated at the Mobile Infirmary Medical Center for an asthma attack, vomiting, acute dyspnea and hyperventilation.  (Id. at 184-193).  On October 7, 2004, she was treated at the Franklin Primary Heath Center for complaints of headaches, stomachaches, vomiting and chest pain. (Id. at 204-205).  Her asthma/allergy medications include Flovent, Singulair, Nasonex, Zyrtec, Albutural, Azmacort, Xeophonex, Floradil, Advair, Proventil and Epipen.  (Id. at 75, 102-103).

1.   **Whether the ALJ erred in finding that Plaintiff has a less than marked limitation in the domain of interacting and relating with others?**

Plaintiff argues that the ALJ erred in finding that she has a less than marked limitation in the domain of interacting/relating with others based upon: 1) a June 13, 2001 psychological evaluation conducted by Basivi Baddigam, M.D. ("Dr. Baddigam") (which noted that she suffered from depressive disorder NOS and his prognosis for her was "guarded) (Tr. 133-135); 2) her mother's reports in a May 20, 2001 daily activities questionnaire (that she does not do much

or play with anyone but her sisters, she suffers mood swings and could become very snappy and distant) (Id. at 87-90); and 3) the June 22, 2001 findings of a State Agency medical consultant (that she had a less than marked limitation in this domain) (Id. at 138-143). (Doc. 9 at 5).

As detailed supra, where, as in this case, a claimant's impairment(s) does not meet or medically equal any Listing, the ALJ must determine whether the impairment(s) results in limitations which functionally equal the criteria for a Listing. 20 C.F.R. § 416.926a(a). In assessing the domain of interacting/relating with others, the ALJ is to "consider how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Here, the ALJ did just that, and found no marked limitations in two domains of functioning, and no extreme limitation in one domain of functioning, thus concluding that Plaintiff's impairment is not functionally equivalent to a Listing. (Tr. 25-26, 28). Based upon a review of the record, the undersigned finds that the ALJ did not err.

Specifically, the record contains substantial evidence to support the ALJ's finding and reveals that he carefully considered the evidentiary record as a whole, the testimony at the hearing, arguments presented and applicable law and regulations, in finding

14

that Plaintiff is not disabled.  Finding that Plaintiff has only a less than marked limitation in the domain of interacting/relating with others, the ALJ stated that:

> Based on the record, the claimant's condition does not meet or medically equal the criteria for any impairment listed in Appendix 1, Subpart P, Part 404.  As the Administrative Law Judge has concluded that the child does not have an impairment that meets or medically "equals" the severity of a listed impairment, a determination must be made as to whether the child's impairments are functionally equivalent in severity to any listed impairment.  In making this determination, the functional limitations resulting from the claimant's impairments will be compared with the functional limitations which result from listed impairments, whether or not related to the claimant's specific medical condition.
>
> * * *
>
> For the purpose of analysis of functional equivalence, consideration is given to six domains [one of which is]:
>
> 3) Interacting and relating with others (how well the child initiates and sustains emotional connections with others, develops and uses the language of the community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others);
>
> * * *
>
> **Interacting and Relating With Others**
> In this domain, the undersigned agrees with the state agency examiner that the claimant has a less than marked limitation of functioning.
>
> * * *
>
> To summarize, the claimant does not have an "extreme" limitation in one area of functioning or "marked" limitation in two areas; therefore, it cannot be concluded that the claimant is disabled on the basis that she has impairments that are <u>functionally</u> equivalent in severity to any listed impairment.  The undersigned finds that the claimant is limited to a degree because of her asthma, but it is not an extreme limitation. She is able to attend school regularly and even rides the bus to and from school. She enjoys age-appropriate activities of daily living. While her mother alleges that she suffers from emotional difficulties and the consulting

psychologist diagnosed her with depression, the
undersigned finds that the claimants' mental impairments
do <u>not</u> cause marked limitations of functioning. This
conclusion is supported by the claimant's GAF score of 70
which indicates only mild symptomatology, as well as the
report from the school counselor, and the observations of
the consulting psychologist during the claimant's
evaluation. The claimant's alleged speech impairment has
apparently been resolved and is non-severe.

The undersigned concludes that the claimant does not have
an impairment, or a combination of impairments, that
meets, medically equals or functionally equals any of the
impairments listed . . . .
* * *

(Tr. 22-27 (emphasis in original)).

At the outset, no physician, treating or otherwise, ever
concluded that Plaintiff has a marked limitation in the domain of
interacting/relating with others. Additionally, Plaintiff's school
teacher, Ms. Parker, reported in a June 2001 School Activities
Questionnaire that she has <u>no</u> problems with social relationships
(including peers and teachers) and that she has not ever been
observed exhibiting any inappropriate behavior or "behaviors of
concern." (Tr. 91-92). Ms. Parker also found that Plaintiff has <u>no</u>
problems with attention span/concentration/on-task behavior, the
ability to work unsupervised, understanding assignments and
completing them on time, responding to change and routine in the
classroom or with age-appropriate self care and hygiene. (<u>Id</u>.)
Similarly, while Plaintiff's mother complained to Dr. Baddigam that
Plaintiff was teased/picked on at school, keeps to herself most of
the time and does not interact with others, she then conceded that

16

Plaintiff does not have any major behavioral problems and that she gets along well with her peers, makes good grades and has no learning problems or language delays. (Id. at 133-135). Plaintiff likes to watch television, play video games, swim, do homework, has friends her own age, can make new friends, generally gets along with her siblings, mother, other adults and school teachers, and once in a while, she talks on the telephone with friends from school. (Id.) Moreover, psychologist Dr. Baddigam observed during his evaluation that Plaintiff was able to maintain friendships, was alert, oriented, friendly and cooperative, smiled frequently, and had an appropriate affect and euthymic mood. (Id.) Further, the State Agency medical consultant concluded that Plaintiff has a less than marked limitation in the domain of interacting and relating with others.[13] (Id. at 138-143). In sum, substantial evidence supports the ALJ's finding that Plaintiff has a less than marked limitation in the domain of interacting/relating with others. Plaintiff has not pointed to any evidence in the record which supports her claim of a "marked" limitation in this domain. Thus, the ALJ properly concluded that she is not disabled. See, e.g., Gibbs v. Barnhart, 130 Fed. Appx. 426, 432 (11th Cir. 2005) (unpublished) (per curiam).

**2.    Whether the ALJ erred by failing to find that Plaintiff's depression is a severe impairment?**

---

[13]Edwards v. Sullivan, 937 F.2d 580, 584-585 (11th Cir. 1991) (holding that an ALJ may properly rely upon the opinion of a non-examining physician when consistent with the opinion of the examining physicians). See also Perales, 403 U.S. at 408 (finding that the use of a non-examining medical expert is proper); 20 C.F.R. § 416.927(f)(2); SSR 96-6p.

As noted _supra_, Plaintiff contends that the ALJ erred in finding that she does not suffer from the severe mental impairment of depression, based upon: 1) a July 6, 2001 disability examiner and transmittal secondary diagnosis of an affective disorder (Tr. 31); 2) Dr. Baddigam's June 13, 2001 consultative psychological evaluation (depressive disorder NOA and prognosis of "guarded" condition) (_Id_. at 133-145); 3) childhood disability evaluation form which listed depression as a severe impairment (_Id_. at 138-143);[14] and 4) her mother's statements in a May 20, 2001 child disability report (that she is very emotional about her asthma, cries a lot and is so depressed that she will not communicate, is picked on by other students) (_Id_. at 87-90).  (Doc. 9 at 5-6).

The undersigned is aware of the standard for a non-severe impairment as set forth in _Brady v. Heckler_, 724 F.2d 914, 920 (11th Cir. 1984), which states that an impairment is severe if it causes more than just a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the ability to work without regard to the plaintiff's age, education or work experience.  However, the undersigned also recognizes the standard for review, _i.e._, is there substantial evidence in the record to support the ALJ's finding.  Substantial evidence which is defined as "more than a scintilla but less than a preponderance,"

---

[14]As asserted at the October 31, 2005 oral argument, but not in Plaintiff's brief.

consists of "such relevant evidence as a reasonable person would accept as adequate so support a conclusion." <u>Richardson</u>, 402 U.S. at 401; <u>Bloodsworth</u>, 703 F.2d at 1239.   The "reasonable person" standard dictates that if there is pertinent and adequate evidence supporting a decision, it must be upheld. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).  This Court may neither substitute its own judgment for the Commissioner's nor reevaluate the evidence unless the decision is clearly illogical and unsubstantiated. <u>Bloodsworth</u>, 703 F.2d at 1239.  <u>See</u> <u>also</u> <u>Powell v. Heckler</u>, 773 F.2d 1572, 1575 (11th Cir. 1985).   Therefore, even when the evidence appears to weigh against the Commissioner's decision, this Court must affirm the decision if there is sufficient supporting evidence. <u>Martin</u>, 894 F.2d at 1529; <u>Bloodsworth</u>, 703 F.2d at 1239.

Upon consideration of the entire administrative record including the testimony of Plaintiff's mother at the administrative hearing, the undersigned finds that the decision of the ALJ, that Plaintiff does not suffer from the severe mental impairment of depression, is supported by substantial evidence.  Specifically, at the administrative hearing on January 7, 2003, the sum total of testimony regarding Plaintiff's depression consisted of the mother's testimony that Plaintiff does not see any type of counselor for depression, other than talking with her pastor, and that she is not being treated by anyone for depression. (Tr. 215).  Interestingly, at the oral argument held on October 31, 2005, Plaintiff's counsel

admitted that Plaintiff's mother was "not very diligent in getting treatment for Plaintiff" for depression – that she only took her to see her pastor in the past.  <u>See</u> Audio Transcript 10/31/05 Hearing, FTR Gold Program.  The fact that Plaintiff received no treatment for her allegedly disabling mental impairment is significant given that she bears the burden of demonstrating that her impairment is severe. <u>See</u>, <u>e.g.</u>, <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987); <u>Macia v. Bowen</u>, 829 F.2d 1009, 1012 (11th Cir. 1987).

Moreover, Plaintiff's mother's reports of depression stemming from her asthma (<u>i.e</u>, that her asthma condition makes her very emotional and cry, that she is teased/picked on by other students for her condition and has mood swings related to same), are undermined by the record as a whole.  <u>See</u> <u>supra</u>.  Similarly, while Dr. Baddigam concluded that Plaintiff had a depressive disorder and that she was in a "guarded" condition," his psychological consultative examination did not provide any explanation for his findings.  (Tr. 133-135).  In Dr. Baddigam's report, he noted that Plaintiff reported feeling sad when kids teased her, yet he assigned her a GAF score of 70, which is indicative of only mild symptoms. (<u>Id</u>.)  In fact, the majority of Dr. Baddigam's observations of Plaintiff during the evaluation noted no signs of depression.  (<u>Id</u>.) To the contrary, Dr. Baddigam found that Plaintiff smiled frequently during the evaluation, had good eye contact, had good attention span, had normal gait, fair hygiene/grooming, was cooperative and

pleasant, sensorium was alert and oriented, had no suicidal thoughts, hallucinations, delusions or obsessions, had reasonable three wishes, her psychomotor activity was within normal limits, had a fund of general knowledge, had clear/spontaneous/coherent/goal-oriented speech, her thinking process was well organized, her affect was appropriate, she had a euthymic mood and her judgment was correct. (Id.)  Given these findings by Dr. Baddigam, and the other evidence of record, the ALJ properly questioned Dr. Baddigam's conclusion of a "guarded" condition, as such conclusion lacked any explanation and was inconsistent with the observations record by him in his evaluation of Plaintiff. (Id. at 26).  Accordingly, the ALJ did not err in rejecting the ultimate conclusion contained in the one-time consultative report, where as here, it is not consistent with the other findings in the report, and is against the substantial record evidence.  See, e.g., Crawford v. Comm'r of Social Security, 363 F.3d 1155, 1160-1161 (11th Cir. 2004); Riley v. Massanari, 139 F. Supp. 2d 1293, 1298-1299 (M.D. Ala. 2001); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

Additionally, Plaintiff's school counselor and teacher, Ms. Parker,[15] noted that during the August 2000 through June 2001 time period, there were no problems with Plaintiff's attention span, on-task behavior, concentration or ability to work without supervision.

---

[15]Plaintiff's counsel conceded, at the October 31, 2005 oral argument, that the teacher's reports are not favorable to Plaintiff.

(Tr. 91-92). She also noted that Plaintiff understood assignments and completed them on time, responded adequately to change in the classroom and engaged in age-appropriate behavior. (Id.)

Furthermore, nothing in the record indicates that Plaintiff is suffering from any type of depressive disorder that limits her in any way. The record reveals no mental health treatment, no treatment for depression, no medication for depression, and no findings of any type of mental impairment that would impair her functioning. The record is simply devoid of any evidence which shows treatment for depression, much less any finding by any physician, treating or otherwise, that Plaintiff has any type of functional limitations due to depression. While Plaintiff cites to a June 22, 2001 childhood disability evaluation form which evaluated her functionality, and which listed depression as a severe impairment, the conclusion in that form was that her depression did not meet, medically or functionally equal the Listings, and that she functioned at her regular 4th grade level. (Tr. 138-143).

Based on the substantial record evidence, the ALJ did not err in finding that Plaintiff's alleged depression is not a severe impairment. See, e.g., Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999) (citing to 42 U.S.C. § 405(g) and Martin, 894 F.2d at 1529). Plaintiff did not meet her burden of proving that her depression is a severe impairment, and the substantial evidence of record does not conclusively establish that her alleged depression

22

results in any limitations or that it is anything more than slight. <u>McDaniel v. Bowen</u>, 800 F.2d 1026, 1031 (11th Cir. 1986).

**V.   <u>Conclusion</u>**

For the reasons set forth herein, and upon careful consideration of the administrative record, it is the recommendation of the undersigned Magistrate Judge that the decision of the Commissioner of Social Security denying Plaintiff's claim for disability insurance benefits, be **AFFIRMED.**

The attached sheet contains important information regarding objections to this **<u>Report and Recommendation</u>**.

DONE this **31**[st] day of **March, 2006.**

      /s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**

23

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.   **<u>Objection</u>**.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a <u>de</u> <u>novo</u> determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   <u>See</u> 28 U.S.C. § 636(b)(1)(c); and <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **<u>Opposing party's response to the objection</u>**.   Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.   <u>See</u> Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

__ **/s/ SONJA F. BIVINS** __

**UNITED STATES MAGISTRATE JUDGE**
